## ELLEN CODY v. HENRY P. PHELPS.

*Lease—Abandonment of family—Execution.*

Where the assignee of an invalid lease has abandoned his family, and a new lease is given to his wife, running in his name but signed by the wife by attaching her mark to his name, he is not bound by her act and does not become a party to the lease; and if she and her minor children farm the land she is entitled to the crops and they cannot be taken upon an execution against the husband.

The wife is the head of the family when the husband abandons it.

Error to Van Buren.　Submitted October 26, 1881. Decided January 18, 1882.

CASE. Plaintiff brings error. Affirmed.

*Hughes, O'Brien & Smiley* for plaintiff in error. Ownership of a crop *prima facie* follows the title to the farm: *Hill v. Chambers* 30 Mich. 428; a wife must be regarded as acting as her husband's agent in respect to his land : *People v. Horton* 4 Mich. 67; if she has helped acquire it she has consented to the intermingling of her property with

it so that she cannot claim it as against his creditors: *Campbell v. Campbell* 21 Mich. 438; *Glover v. Alcott* 11 Mich. 470; *Tong v. Marvin* 15 Mich. 71; the children's services belong to the husband: *Shute v. Door* 5 Wend. 204; so do the wife's, during coverture: *Seitz v. Mitchell* 94 U. S. 580; so do their joint earnings during coverture: *Bucher v. Ream* 68 Penn. St. 426.

*Annable & Fitch* for defendant in error.   A wife's earnings are treated as her separate estate: 1 Bish. Married Women § 21: 2 id. § 420; Schouler Dom. Rel. 244, 295; a husband cannot be compelled to appropriate his wife's earnings to the payment of his creditors: 1 Bish. Mar. Women §§ 212, 213: 2 id. §§ 418, 420, 427, 458, n. 2; a wife may carry on business in her own name: *Tillman v. Shackleton* 15 Mich. 447; and need not assume debts not incurred by her or on her account: *Newcomb v. Andrews* 41 Mich. 518; *Emery v. Lord* 26 Mich. 431; *Willard v. Magoon* 30 Mich. 273; *Morrison v. Berry* 42 Mich. 389.

MARSTON, J.   It is admitted that the lease from the executors, of the lands whereon the wheat in question was grown, was invalid and that Peter Cody, as assignee thereof, would have had no right to the possession of the premises thereunder as against the heirs or those claiming under them.   The evidence tends to show quite strongly, and the jury must have so found, that Peter Cody abandoned his family.   After that time the executor's lease was surrendered up and a new lease from the heirs taken.   This lease upon the face thereof appeared to run to Peter Cody.   The draftsman signed Peter Cody's name to the lease and Mrs. Cody, who could not write, made her mark thereto, or a mark as though executing it for her husband.   The wheat was sown and harvested under this lease.

Under the facts shown in this case it does not appear that Mrs. Cody had any authority whatever to execute this lease for her husband Peter Cody.   He was not bound by her act, and he could not have been held liable for the rent thereon. As he was not a party therefore to this lease, and did not

put in any crop upon the lands or have any knowledge, even, thereof, we think it cannot be said that he was the owner of the crops grown thereunder. Mrs. Cody after his abandonment was in fact the head of the family, and if she and her minor children cultivated this land, she is entitled to the crops grown thereon and could maintain an action therefor.

The judgment should be affirmed with costs.

CAMPBELL and COOLEY, JJ. concurred.

GRAVES, C. J. dissenting. As my views differ from those held by a majority of the court I proceed to explain them.

Phelps took several loads of unthreshed wheat on an execution against the husband of Mrs. Cody and she sued in trover and was allowed to recover. Several questions relating to evidence were raised but the main point concerned her right of property. The husband and wife were living on his farm which with the assistance of his two sons he carried on. He became assignee of what purported to be a lease of a piece of land lying a mile and a half distant. The lease was given by the executors of an estate. He went into possession and with the assistance of his sons worked the premises until the early part of August, 1878. He had partially prepared a parcel of fifteen acres for wheat and had provided a portion of the seed therefor. Having occasion to carry a load of wheat to market, he indulged in liquor and on returning home was not able to account for his doings and sharp words were exchanged between himself and Mrs. Cody. He threatened to go away and not return, and very soon went. They subsequently corresponded but at the time of the trial in April, 1880, he had not returned. His wife and family were left on his farm and have continued to reside there. The home was not broken up but remained as previously. There was no recourse for the rights and powers which the probate court may confer on abandoned wives. Comp. L. ch. 171.

But in the course of a few days, the executors on information that they had exceeded their powers in giving the lease

47 MICH.—28

referred to, proposed to Mrs. Cody that she should give it up in exchange for $10 and a lease from the heirs to her husband for the 15 acres for the term of one year, and she complied and the heirs made a lease to Mr. Cody for that parcel, and she received it. Following this the two minor sons with their mother's aid completed the preparation of the 15 acres for wheat and sowed it. In so doing they simply continued the farming operations which had been going on, and with no other change than the absence of the head of the family. The wheat in controversy was a portion of this crop. The jury were charged that the land on which the wheat grew belonged to neither the husband nor wife but to a third person; and this instruction was followed by other directions which made the question of title turn, and Mrs. Cody's right of action depend, on whether her husband in going away intended to abandon her. The view of the court seems to have been that, supposing the land was owned by third persons, she was in the position of an abandoned wife carrying on the premises of a stranger, and was to all intents and purposes the sole owner of the crop produced on it. The allusion to the ownership of the land was liable to mislead. The husband was the actual lessee under a written lease which could not be altered or impaired by parol statements of conflicting understandings, and so far as the fact of title to the land had any bearing on the controversy between these litigants, it tended to show that the husband was owner of the wheat, and all deductions in favor of her right to it to be drawn from the want of title to the land were foreclosed.

Whether, in absenting himself, Cody intended or did not intend to permanently desert her could make no difference with the title to the crop. The putting of it in was nothing else in point of law than a continuation of Cody's farming, and his motive for being away could not operate by itself to invest his wife with the title as against his creditors. Had he died the day after the wheat was sown or at any time before the levy, it must have been inventoried as assets of his estate. So too in case he had returned and proceeded to

handle the wheat as his own, it would not have been in his wife's power to take it from him and hold and control it as her sole property. There is no occasion to discuss questions of policy. As the law now is, the title to the wheat was in the husband and was liable for his debts.

I think the judgment should be reversed.